IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JUMAS FOOD MART,                )
                                )
              Plaintiff,         )
                                )
       v.                        )         1:22cv1137
                                )
CHUBB INSURANCE,                 )
                                )
              Defendant.         )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is an insurance coverage dispute between Plaintiff Jumas Food Mart ("Jumas") and Defendant Pacific Indemnity Insurance Company ("Pacific"). Before the court are three motions: Pacific's motion to dismiss the complaint (Doc. 6), Jumas's amended motion to amend the complaint (Doc. 11), and Jumas's motion for extension of time to amend the complaint (Doc. 16). For the reasons set forth below, and despite Jumas's missteps, while the court finds that Jumas's complaint is deficient, Jumas will nevertheless be permitted to file its proposed amended complaint but only as to its breach of contract claim.

**I.   BACKGROUND**

The substantive facts contained in Jumas's complaint and proposed amended complaint, including any attached documents

incorporated into the pleading,[1] are viewed in the light most favorable to it as the non-moving party.

On November 4, 2022, Bernard Ogomo, the "managing member of Jumas" (Doc. 12 at 2), filed this action on behalf of Jumas in the General Court of Justice, Superior Court Division, in the County of Durham against Chubb Insurance ("Chubb"). (Doc. 3.) The sparsely-worded complaint, prepared by Ogomo who is presumably a non-lawyer, alleges the following:

On November 5, 2019, storms and lightning damaged Jumas's business. (Doc. 3 at 2.) Jumas filed a claim with Chubb, with which it had a policy of insurance. (Id.) Chubb dispatched an investigator on April 20, 2020, who gathered details, took photos, and brought in a heating, ventilation, and air conditioning company to conduct an assessment. (Id.) Chubb concluded that "the damages were as a result of extensive power or electrical input into the building." (Id.) Jumas retained a licensed electrician who concluded that the extensive damage was a result of "the storms and lightning because the damages were way beyond norm." (Id.) Although not specifying a claim in the complaint, Jumas seeks

---

[1] In evaluating a motion to dismiss, the court may consider documents attached to the complaint "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). A document is not integral to a complaint, even if the complaint includes a few quotes from and references to the document, if the claims "do not turn on, nor are they otherwise based on, statements contained" in the document. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

2

$230,318.00 "for damages for Equipment, Inventory, Loss of Revenue in addition to all other aspect [sic] of the business."  (Doc. 3 at 3.)

On December 28, 2022, Pacific removed the action to this court, asserting diversity jurisdiction, and noted that it, not Chubb, issued the policy to Jumas.[2]  (Doc. 1 n.1.)

On January 4, 2023, Pacific filed and served on Jumas the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 6.)  The next day, the Clerk of Court sent Jumas a Roseboro[3] letter informing it of the pending motion to dismiss, Jumas's right to respond within 21 days of service of the motion, and the likelihood the case would be dismissed if Jumas did not respond.  (Doc. 8 at 1.)

Jumas failed to file any response within the 21 days.

On February 13, 2023, Jumas, having retained counsel, filed a motion to amend the complaint (Doc. 11) and submitted a proposed amended complaint (Doc. 11-1).[4]  Jumas also filed a memorandum in support of its motion to amend and in opposition to Pacific's

---

[2] Pacific contends that there is complete diversity because it is a citizen of Wisconsin and New Jersey (Doc. 1 ¶ 11) and Jumas is a citizen of North Carolina because its sole member is Ogomo, a North Carolina citizen (Doc. 1 ¶ 10).  Jumas has since confirmed that it has two members who are North Carolina citizens.  (Doc. 19.)

[3] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[4] Jumas initially filed a motion to amend the complaint (Doc. 10) but on the same day filed an "amended motion to amend motion to amend complaint" (Doc. 11).

motion to dismiss. (Doc. 12.)

The proposed amended complaint contains two claims: breach of contract ("Count I") and unfair and deceptive acts and practices pursuant to North Carolina General Statute § 58-63-15(11) ("Count II"). According to the proposed amended complaint, which contains more fulsome allegations and was prepared by counsel, and the attachments thereto, Jumas operates a convenience store in Durham, North Carolina. On October 31, 2019, it renewed its insurance policy (the "Policy") with Pacific. (Doc 11-1 ¶ 9.) On November 5, 2019, while the Policy was in effect, lightning struck Jumas's store and caused an electrical surge that damaged its equipment and inventory. (Id. ¶ 10.) The next day, November 6, 2019, Jumas contacted Cecil Ingram, a licensed electrician, to investigate. (Id. ¶ 11.) Ingram concluded that "an electrical storm must have caused the damage due to its magnitude." (Id.) Based on this, Jumas filed a claim under its Policy with Pacific. (Id. ¶¶ 11-12.)

Pacific subsequently assigned the claim to Chubb adjuster Kary Brown. (Id. ¶ 12.) Brown engaged Paul Hasty, an independent adjuster, who conducted an investigation on April 20, 2020.[5] (Doc. 11-4 at 1.) On September 11, 2020, Brown sent Ogomo a letter

_____

[5] Chubb's letter to Ogomo, attached to the proposed amended complaint, states that its independent adjuster inspected the property on April 20, 2020, but also states that it received notice of the loss on August 26, 2020. (Doc. 11-4 at 1.) Neither party has addressed this seeming inconsistency.

4

stating that Chubb was continuing to review the claim and evaluate coverage under the Policy. (Doc. 11-1 ¶ 13.) That was followed by a letter on November 24, 2020, denying coverage because the insurer was "unable to determine if the surge was caused by lightening [sic]." (Doc. 11-1 ¶ 14.) The adjuster explained:

> We engaged an independent adjuster, Paul Hasty of Engle Martin & Associates, to assist with determining the cause of loss and date of loss. On April 20, 2020, Mr. Hasty inspected the property as well as spoke with Cecil Ingram of Ingram Electrical and he confirmed he was onsite on 11/6/19 as shown on his invoice. Mr. Hasty also obtained weather reports for dates November 2, 2019 through November 12, 2019 as well as November 13, 2019 through November 15, 2019. Both weather reports confirmed ZERO lightning strikes detected within 4 miles of the property for the dates inquired. In Mr. Ingram's opinion, the damage was caused by a surge but he did not know if lightning contributed or not. We also engaged HVACi in an effort to determine the cause of loss and date of loss. HVACi completed their inspection, [and] it is the opinion of HVACi investigators that the primary cause of loss to the 3 HVAC systems is high Voltage surge, [as] there was no evidence of a direct lightning strike present. I also reached out to Duke Energy, [and] the representative confirmed the only reported power surge/power outage reported at the loss location appears to have occurred in March 2020 but [he] was unable to determine whether the cause was lightning.

(Doc. 11-4 at 1-2.) The letter went on to quote key provisions of the Policy, including the following exclusionary language: "Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power." (Id. at 3.) Based on this, the letter concluded, "[W]e must respectfully deny this claim." (Id.)

5

Jumas alleges that although the Policy states that the insurer "will pay for direct physical loss to the Covered Property," it denied the claim because the Policy "does not cover damages related to 'accidental power surges.'" (Doc. 11-1 ¶ 15.) Jumas contends that Pacific denied the claim even though "[i]ndependent adjusters could not conclude how the damage occurred[.]" (Id. ¶ 16.)

On February 27, 2023, Pacific responded in opposition to Jumas's motion to amend the complaint (Doc. 13), and Jumas filed a reply on March 13, 2023 (Doc. 14).

On June 5, 2023, because Jumas's response to Pacific's motion to dismiss was filed out of time, the court ordered Jumas to show cause "before June 13, 2023" why its failure was the result of excusable neglect. (Doc. 15.) On June 13, 2023, Jumas filed a motion for extension of time to amend the complaint (Doc. 16) accompanied by an affidavit by Ogomo (Doc. 17). On June 22, 2023, Pacific filed a response in opposition to Plaintiff's motion for extension of time to amend the complaint. (Doc. 18.)

The motions are fully briefed and ready for decision.

## II. ANALYSIS

### A. Timeliness

The court first considers Pacific's motion to dismiss the complaint and the timeliness of Jumas's response to it.

Local Rule 7.3(f) provides that a "respondent, if opposing a motion, shall file a response, including brief, within 21 days

6

after service of the motion." Further, "[t]he failure to file a brief or response within the time specified in this rule <u>shall</u> constitute a waiver of the right thereafter to file such brief or response, except upon a showing of excusable neglect." L.R. 7.3(k) (emphasis added). The local rules also provide that "[i]f a respondent fails to file a response within the time required by this rule, the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." L.R. 7.3(k). The language of the local rules invokes Federal Rule of Civil Procedure 6(b), which allows a court to grant an extension of time "for good cause . . . if the party failed to act because of excusable neglect."

"'Excusable neglect' is not easily demonstrated, nor was it intended to be." <u>Thompson v. E.I.DuPont de Nemours & Co.</u>, 76 F.3d 530, 534 (4th Cir. 1996). The burden of showing excusable neglect rests with the party asserting it. <u>Id.</u> (citing <u>In re O.P.M. Leasing Serv., Inc.</u>, 769 F.2d 911, 917 (2d Cir. 1985)). While the court has discretion in determining what constitutes excusable neglect, "ignorance of when a time period expires does not qualify as excusable neglect, nor does a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity." <u>Key v. Robertson</u>, 626 F. Supp. 2d 566, 577 (E.D. Va. 2009) (quoting <u>Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.</u>, Civ. A. No. 3:06cv264, 2006 WL 1720681, at *4 (E.D. Va. June 20, 2006)

(citation omitted)). Even if a party has demonstrated "excusable neglect," it is not "entitle[d] [to] relief from the filing deadline," as the decision "whether to grant an enlargement of time still remains committed to the discretion of the district court." Thompson, 76 F.3d at 532 n.2.

Jumas concedes it received Pacific's motion to dismiss, but it contends it never received a copy of the court's Roseboro letter. (Doc. 17 ¶¶ 10-11.) Jumas pleads difficulty retaining counsel to justify its failure to file a timely response to Pacific's motion to dismiss. (Id. ¶¶ 12-14.) But it is clear that Jumas did not begin to search for counsel until after the filing of the motion to dismiss, even though Ogomo was represented by counsel "personally, in another matter" at the time (id. ¶ 12), and even then Ogomo has not demonstrated that his search was diligent (id. ¶¶ 12-14). Indeed, Ogomo did not retain counsel until February 13, 2023, three days after he met with counsel. The court issued an order on June 5, 2023, granting Jumas a week within which to show cause why its failure to respond to the complaint and timely move to amend the complaint were the result of excusable neglect. (Doc. 15.) On June 13, counsel filed a response only as to why Jumas contended that its motion to amend should be considered; it did not move to have its response to the motion to dismiss considered timely. (Doc. 16.) In light of

this history, Jumas has not shown excusable neglect.[6]

Even though the court treats Pacific's motion to dismiss as unopposed, however, the court should not grant it only because Jumas failed to file a response. <u>Gardendance, Inc. v. Woodstock Copperworks, Ltd.</u>, 230 F.R.D. 438, 449 (M.D.N.C. 2005); <u>Stevenson v. City of Seat Pleasant, Md.</u>, 743 F.3d 411, 416 n.3 (4th Cir. 2014) ("[T]he mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." (quoting <u>Pomerleau v. W. Springfield Pub. Sch.,</u> 362 F.3d 143, 145 (1st Cir. 2004) (citation omitted))); <u>Braley v. Thompson</u>, Civ. A. No. 2:22cv534, 2023 WL 2351881, *2 (S.D. W. Va. Mar. 3, 2023); <u>Wiggins v. MacManiman</u>, 698 F. App'x 42, 43 (3d Cir. Sept. 29, 2017) (noting that the law favors disposition of litigation on the merits and vacating district court's summary dismissal of an action on the basis that plaintiff failed to respond); <u>Issa v. Comp USA</u>, 354 F.3d 1174, 1178 (10th Cir. 2003). Therefore, the court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." <u>Braley</u>, 2023 WL 2351881, at *2 (collecting cases).

---

[6] Ogomo's attempt to equate his situation to that of a pro se prisoner, citing <u>Houston v. Lack</u>, 487 U.S. 266, 268-69 (1988), is misplaced. He is not incarcerated and, as noted, at the time he filed suit he already had counsel representing him "personally, in another case." (Doc. 17 ¶ 12.)

9

A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, when considering a Rule 12(b)(6) motion, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

Rule 12(b)(6) should be balanced against Federal Rule of Civil Procedure 8(a)(2), which provides simply that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) thus protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from

10

conceivable to plausible." Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678. District courts "must liberally construe a pro se litigant's complaint," but the court "need not attempt 'to discern the unexpressed intent of the plaintiff.'" Benton v. Layton, --- F. Supp. 3d ---, 2022 WL 4274121 (E.D. Va. Sept. 15, 2022) (slip op.) (quoting Laber v. Harvey, 438 F.3d 404, 413 n.3 (4th Cir. 2006)).

Judged by these standards, the bare bones complaint plainly fails to state a claim on which relief can be granted. It alleges only that Jumas held an insurance policy against which it filed a claim, Chubb conducted an investigation that concluded Jumas's damages were a result of extensive power into the building, Jumas brought in a licensed electrician that came to an opposite conclusion, and Chubb did not pay its damages. (Doc. 3 at 1-3.) The complaint fails to allege what, if anything (including breach), Chubb did wrong. Consequently, Pacific's motion to dismiss is well-founded and should be granted.

However, because the pleading deficiency can easily be remedied, the court should dismiss the action without prejudice. But doing so here, where there may be a statute of limitations concern, may prejudice Jumas. Ordinarily, in such circumstances, the court would provide a plaintiff a reasonable period of time within which to file an amended complaint before dismissing the action. See Doe v. Virginia Polytechnic Inst. & State Univ., 617

11

F. Supp. 3d 412, 434 (W.D. Va. 2022) ("If a lawsuit is dismissed without prejudice, meaning it can be refiled, 'the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing.'" (citations omitted)). Here, Jumas has already moved to amend and filed a proposed amended complaint, even though the motion to amend itself is untimely. For the reasons noted, however, the court will nevertheless proceed to address the motion to amend to determine whether Jumas's proposed amended complaint corrects the deficiencies.

**B.  Proposed Amended Complaint**

Federal Rule of Civil Procedure 15(a)(1)(B) provides that a plaintiff may amend the complaint once as a matter of course within 21 days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Rule 12(b), (e), or (f). After that period, a party may amend only with either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). The court is mindful that the general policy embodied in the federal rules favors resolution of cases on their merits. Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980).

The Fourth Circuit has interpreted Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber, 438 F.3d at 426 (citation omitted); Foman, 371 U.S. at 182 (same). Although not dispositive, "absence of prejudice . . . will normally warrant granting leave to amend." Davis, 615 F.2d at 613. However, "if the proposed change advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 1487, at 637 (1991)) (quotation omitted and alterations adopted); see Joyner v. Abbott Labs, 674 F. Supp. 185, 190 (E.D.N.C. 1987). In determining whether a proposed amended complaint would be futile, the court reviews the pleading under the same standard used to evaluate a motion to dismiss for failure to state a claim upon which relief can be granted. Amaya v. DGS Construction, LLC, 326 F.R.D. 439, 451 (D. Md. 2018) (citing Katyle v. Penn National Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011)). In other words, "[a] motion to amend a complaint is futile 'if the proposed claim would not survive a motion to dismiss.'" Pugh v. McDonald, 266 F. Supp. 3d 864, 866 (M.D.N.C. 2017) (quoting James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).

13

Applying these standards, the court turns to the allegations in the proposed amended complaint.

### 1. **Breach of Contract**

Pacific contends that Jumas's contract claim is futile because Jumas failed to give the insurer timely notice. (Doc. 13 at 10-11.) Pacific relies on Great American Insurance Company v. C.G. Tate Construction Company, 340 S.E.2d 743 (N.C. 1986), which North Carolina courts utilize to "assess[] whether an insurer may be relieved of its obligation to indemnify due to its insured's asserted failure to comply with a policy requirement that notice of loss be given to the insurer 'as soon as practicable.'" Metric/Kvaerner Fayetteville v. Fed. Ins. Co., 403 F.3d 188, 197 (4th Cir. 2005). The "'Great American test' is as follows: (1) whether there was a delay in notifying the insurer of a covered loss (the 'Notice Element'); (2) if such notice was delayed, whether the insured acted in good faith with respect to the delay (the 'Good Faith Element'); and (3) if the insured acted in good faith, whether the insurer was nevertheless materially prejudiced by the delay (the 'Prejudice Element')." Metric/Kvaerner Fayetteville, 403 F.3d at 197-98. As the North Carolina Supreme Court noted, this test is one to be decided by the trier of fact. Great American, 340 S.E.2d at 746 (quoting Ins. Co. v. Constr. Co., 279 S.E.2d 769, 771 (1981)). Whether Jumas's notice here passes or fails this test is therefore a fact question not suitable

14

for resolution on a motion to dismiss, where all facts must be viewed in the light most favorable to Jumas.

As Jumas's alleged failure to abide by the Policy's notice provision is Pacific's sole ground for arguing the futility of amending the complaint as to Count I, the court will grant Jumas's amended motion to amend the complaint as to Count I. Pacific's motion to dismiss the complaint will be granted but stayed for seven days to permit Jumas to file its proposed amended complaint as to Count I.

### 2. Unfair and Deceptive Trade Practices

The proposed amended complaint alleges in Count II that Pacific engaged in unfair and deceptive acts and unfair settlement practices in violation of North Carolina General Statute § 58-63-15(11). (Doc. 11-1 at 4.) Pacific argues that the proposed amended complaint contains only "bare-bones, conclusory allegations" that parrot the statutory elements and do not meet Federal Rule of Civil Procedure 9(b)'s particularity requirements. (Doc. 13 at 15-16.)

Chapter 58 covers unfair and deceptive trade practice claims in the context of insurance providers. The statute, sometimes called the "Claims Act," creates a cause of action in favor of the Commissioner when an insurance company commits or performs any of fourteen specified actions with such frequency as to indicate a general business practice. N.C. Gen. Stat. § 58-63-15(11). See

15

also Pearce v. Am. Def. Life Ins. Co., 343 S.E.2d 174, 179 (N.C. 1986) (stating that "insurance statutes, N.C.G.S. § 58-54.1, et seq. [now § 58-63-15], . . . do not contain a right of private action" (quoting Winston Realty Co. v. G.H.G., Inc., S.E.2d 677, 681 (N.C. 1985))). Although a violation of Chapter 58 is actionable only by the Commissioner of Insurance, the types of conduct listed in it can be used to support a private cause of action pursuant to North Carolina's unfair and deceptive trade practices statute, N.C. Gen. Stat. § 75-1.1 ("UDTPA"). Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018) (stating that while § 58-63-15(11) does not "provide[] a private cause of action for violations, . . . the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim" (quoting Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 563 S.E.2d 269, 278 (N.C. Ct. App. 2002))); Pearce, 343 S.E.2d at 179 (holding that "a violation of N.C.G.S. § 58-54.4 [now § 58-63-15] as a matter of law constitutes an unfair or deceptive trade practice in violation of N.C.G.S. §75-1.1"). Conduct that violates the Claims Act, even in the absence of a separate claim under that statute, constitutes a UDTPA violation as a matter of law. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 684 (N.C. 2000) (insurer's act of failing to attempt in good faith to effectuate prompt and fair claims settlements is a violation of N.C. Gen. Stat. § 75-1.1 "separate and apart from any violation of N.C.G.S. § 58-63-

16

15(11)[f]"); <u>Country Club</u>, 563 S.E.2d at 279 (applying rule to prohibited acts under North Carolina General Statute § 58-63-15(11)); <u>see also</u> <u>Page v. Lexington Ins. Co.</u>, 628 S.E.2d 427, 429 (N.C. Ct. App. 2006). Such conduct does not require "an additional showing of frequency indicating a general business practice, because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." <u>Elliott</u>, 883 F.3d at 396 (internal citation and quotation marks omitted). However, "[s]imply invoking Chapter 58-63-15(11) does not suffice to state a claim." <u>Neshat v. Nationwide Mut. Fire Ins. Co.</u>, No. 5:20-CV-664-D, 2021 WL 2168906, at *4 (E.D.N.C. May 27, 2021) (citation and internal quotation marks omitted).

For a plaintiff to recover under North Carolina's unfair and deceptive trade practices statute, it must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiffs." <u>First Protective Ins. Co. v. Rike</u>, 516 F. Supp. 3d 513, 532 (E.D.N.C. 2021) (quoting <u>Gray</u>, 529 S.E.2d at 681). "Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court." <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 164 (4th Cir. 2012) (quoting <u>Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond</u>, 80 F.3d 895, 902 (4th Cir. 1996)); <u>see also</u> <u>Gray</u>, 529 S.E.2d at 681.

17

The standard required to constitute an unfair or deceptive trade practice "depends on the circumstances of the particular case," yet the practice must involve "some type of egregious or aggravating circumstances" in order to violate the statute. Belk, 679 F.3d at 164 (citing ABT Bldg. Prods. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 122-23 (4th Cir. 2006)). Unfair practices are those that "offend[] established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id. (citing ABT Bldg. Prods., 472 F.3d at 123); First Atl. Mgmt. Corp. v. Dunlea Realty, Co., 507 S.E.2d 56, 63 (N.C. Ct. App. 1998). An action is considered unfair when a party "engages in conduct manifesting an inequitable assertion of power or position[.]" Gray, 529 S.E.2d at 681 (citing Johnson v. Beverly-Hanks & Assocs., 400 S.E.2d 38, 42 (N.C. 1991)). Deceptive acts have a "tendency or capacity to mislead, or create the likelihood of deception." Belk, 679 F.3d at 164 (quoting Gilbane Bldg. Co., 80 F.3d at 901-02); First Atl. Mgmt. Co, 507 S.E.2d at 63. Acts do not need to be both unfair and deceptive to be actionable, and intent of the actor and good faith are irrelevant. Belk, 679 F.3d at 164 (citations omitted). A breach of contract, even if intentional, ordinarily fails to constitute such an act, absent aggravating circumstances. Griffith v. Glen Wood Co., 646 S.E.2d 550, 558 (N.C. App. 2007).

18

In cases alleging fraud or misrepresentation, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Pacific argues that the proposed amended complaint fails because <u>all</u> UDTPA claims must meet this heightened pleading standard, thus requiring Jumas to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" for its Count II claims. (Doc. 13 at 15 (quoting <u>Topshelf Mgmt., Inc. v. Campbell-Ewald Co.,</u> 117 F. Supp. 3d 722, 725 (2015) (omissions in original)).) In support of this proposition, Pacific quotes <u>Manoula, LLC v. Ohio Security Insurance Co.,</u> Case No. 1:21cv718, 2022 WL 129322 (M.D.N.C. Jan. 13, 2022) (slip opinion), which applied the Rule 9(b) pleading standard to Chapter 75 claims of fraud or misrepresentation. (Doc. 13 at 15.)

Jumas argues that a claim need only be pleaded with "heightened particularity" when a fraud and an unfair and deceptive practice claim are brought in conjunction with one another. (Doc. 14 at 6.) Because it has not brought a fraud claim, it contends, its Chapter 58 claim is not subject to the Rule 9(b) requirement. (<u>Id.</u>) But when a trade practice claim is brought alleging "deceptive" practices, which Jumas alleges (Doc. 11-1 ¶ 27), the Rule 9(b) pleading standard applies. <u>Topshelf Mgmt.,</u> 117 F. Supp. 3d at 731 ("Rule 9(b) applies to section 75-1.1 claims alleging

19

detrimental reliance on false or deceptive representations."); see also Manoula, 2022 WL 129322 (Jan. 13, 2022); Withers v. BMW of N. Am., LLC, 560 F. Supp. 3d 1010, 1019 (W.D.N.C. 2021) ("A fraud-based UDTPA claim is subject to the Rule 9(b) heightened pleading standard[.]") (emphasis added); Smith v. Hatteras/Cabo Yachts, LLC, 2021 WL 2425985, at *4 (E.D.N.C. June 14, 2021) (dismissing under Rule 9(b) plaintiff's Chapter 75 claims essentially alleging fraud); Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 80 (E.D.N.C. 2022) (dismissing plaintiff's "unfair and deceptive trade practices claims based on alleged misrepresentations" for failure to plead with particularity).

Here, Jumas's factual allegations are that Pacific "immediately sought to find any grounds to deny any claims made by Jumas and hired 'independent' adjusters it knew would opine that lightning did not cause the damages"; "refused to consider Cecil Ingram's opinion that the damage was caused by lightning"; and "upon information and belief . . . invented grounds to reject the claims, including the creation of 'alternative weather' at the time of the incident and an 'accidental power surge.'" (Doc. 11-1 ¶¶ 24-26.) Otherwise, Jumas merely recites the provisions of Chapter 58 concerning unfair claim settlement practices. Compare N.C. Gen. Stat. § 58-63-15(11) with (Doc. 11-1 ¶ 27). For example, Jumas alleges that Pacific "misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue" (id.

20

¶ 27(a)); "refus[ed] to pay claims without conducting a reasonable investigation" (id. ¶ 27(d)); and "fail[ed] to promptly settle claims where liability has become reasonably clear[] under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage" (id. ¶ 27(i)).

Merely "parroting the language of [the Statute] is not sufficient to survive a motion to dismiss." Manoula, 2022 WL 129322 (Jan. 13, 2022); see Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 328 (4th Cir. 2001) ("Rule 12(b)(6) requires more than the mere recitation of boilerplate statutory language."). And Jumas's few factual allegations are both conclusory and contradicted by the letters from Chubb attached as exhibits to the proposed amended complaint. For example, although Jumas alleges that Pacific refused to consider Ingram's opinion that the damage was caused by lightning (Doc. 11-1 ¶ 25), Chubb's letter specifically states that its adjuster "spoke with Cecil Ingram of Ingram Electrical." (Doc. 11-4 at 1.) Jumas also alleges that Chubb invented grounds to deny the claim (Doc. 11-1 ¶ 26), yet Chubb's letter enumerates several steps it took to investigate the claim, including inspecting the damage, acquiring information from weather reports, engaging HVAC inspectors, and speaking with energy providers (Doc. 11-4 at 1). Jumas's remaining allegations are purely conclusory, without any factual basis.

Taken in the light most favorable to Jumas, the factual allegations, including Jumas's attachments, show a dispute over the cause of the damages. (Compare Doc. 11-1 ¶ 11 ("Ingram concluded that an electrical storm must have caused the damages due to its magnitude") and Doc. 11-4 at 1 ("In Mr. Ingram's opinion, the damage was caused by a surge but he did not know if lightning contributed or not") with Doc. 11-4 at 2 (Duke Energy representative "was unable to determine whether the cause [of the power surge] was lightning.") (all emphases added).) "A mere disputed claim is not sufficient" for a claim of "unfair and deceptive trade practice" when the insurer's liability for the damage is not "reasonably clear[.]" Neshat, 2021 WL 2168906, at *4 (E.D.N.C. May 27, 2021) (citing Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indem. Co. of Conn., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) ("[T]he fact that Plaintiff may disagree with the assessment of Defendant as to the cause [of damage] does not transform a run of the mill insurance dispute into a tort cognizable under Section 75-1.1.")). An insurer has no duty to settle an insured's claim but must consider settlement of the claim in good faith. Blis Day Spa, LLC v. Hartford Ins. Grp., 427 F. Supp. 2d 621, 635-36 (W.D.N.C. 2006). While Jumas need not prove its allegations with a factual record at this early stage, in order to state a claim that would survive a motion to dismiss (and thus not be futile), it must offer some

22

"factual basis for believing that a legal violation has actually occurred." Migdal, 248 F.3d at 328. See, e.g., Newton v. Standard Fire Ins. Co., 229 S.E.2d 297, 303 (N.C. 1976) (declaring that if "plaintiff claimed that after due investigation by defendant it was determined that the claim was valid and defendant nevertheless refused to pay or that defendant refused to make any investigation at all," aggravated conduct might have been present); see also Manoula, 2022 WL 129322, at n.2 (Jan. 13, 2022) ("[I]t is well settled that a mere breach of contract, even if intentional, cannot sustain a UDTPA claim without a showing of 'substantial aggravating circumstances.'" (quoting Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013))).

Jumas has failed to elevate its conclusory claims from "conceivable to plausible" as required by Rule 12(b)(6). Twombly, 550 U.S. at 570. Consequently, its motion to amend to add Count II will be denied as futile.

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Pacific's motion to dismiss the complaint (Doc. 6) will be GRANTED but that the dismissal will be STAYED for seven days to permit Jumas to file its proposed amended complaint as to Count I in accordance with this order;

IT IS FURTHER ORDERED that Jumas's motion for extension of time to file an amended complaint (Doc. 16) is MOOT;

IT IS FURTHER ORDERED that Jumas's amended motion to amend the complaint is GRANTED as to Count I (breach of contract) but DENIED as futile as to Count II (unfair and deceptive trade practices); and,

IT IS FURTHER ORDERED that Jumas shall have seven days from the date of this order within which to file its amended complaint in accordance with this order as to Count I. Failure to timely do so will result in the denial of the motion to amend the complaint without prejudice and the dismissal of the complaint without prejudice.

/s/   Thomas D. Schroeder
United States District Judge

June 28, 2023